STATE of North Dakota, Plaintiff and Appellee,

v.

Leon L. WOLFF, Defendant and Appellant.

Cr. No. 930243.

Supreme Court of North Dakota.

Feb. 23, 1994.

Rodney K. Feldner (argued), Mandan, for defendant and appellant.

Brian D. Grosinger (argued), Asst. State's Atty., Mandan, for plaintiff and appellee.

NEUMANN, Justice.

This is an appeal from a judgment of conviction. A jury found appellant guilty of violating a permanent adult abuse protection order. Appellant argues that the "service" element of NDCC § 14–07.1–06 (1991) was not met. The trial court denied the appellant's motion for a judgment of acquittal. We affirm.

The material facts are not in dispute. Leon L. Wolff (Wolff) was arrested for violating a permanent adult abuse protection order issued under NDCC § 14–07.1–02 (1989 Cum.Supp.). The original order was issued on April 22, 1991, and was personally served on Wolff. It included a geographical restriction prohibiting Wolff from entering the applicant's residence at Community Homes. This order was amended October 14, 1992, to reflect a change in the applicant's address, and to prohibit Wolff from going within one block of the new address. The amended order was served on Wolff by regular United States mail.

Evidence admitted at trial to establish the element of "service" included: testimony by Marie Voegele of the Abused Adult Resource Center; an affidavit of mailing swearing to the mailing of the amended order; testimony of Donna Bard, then of the Abused Adult Resource Center; and proof of personal service of the original order. The trial court denied Wolff's motion for a judgment of ac-

quittal, and the jury found Wolff guilty of violating the protection order.

On appeal, Wolff argues that the trial court erred in denying his motions for a judgment of acquittal because the State failed to prove "service" of the amended adult abuse protection order.[1] This is a legal, rather than a factual, consideration. *State v. Himmerick*, 499 N.W.2d 568, 572 (N.D.1993). The scope of this appeal is narrow. The only issue is proof of the element of "service." Wolff has not raised issues regarding the adequacy of jury instructions, due process, or other constitutional issues.

Wolff's motion for a judgment of acquittal challenges the sufficiency of the evidence. *Id.*

> "When reviewing sufficiency of the evidence on appeal, the only time we determine that a conviction rests on insufficient evidence is 'when, even after viewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all ·inferences reasonably to be drawn in its favor, no rational factfinder could have found the defendant guilty beyond a reasonable doubt.' If we conclude 'that the prosecution has failed to produce sufficient evidence to prove its case,' we must allow for the entry of a judgment of acquittal."

*Id.* at 573 (citations omitted). We do not reach such a conclusion here.

Wolff's argument relies on two theories. First, he argues that the method of service· was inadequate; second, he argues that the proof of service was inadequate. We disagree with both of these theories.

## I.

First, Wolff argues that service of an amended order by a nonattorney using regular United States mail cannot meet the service element of § 14–07.1–06. We are faced with the preliminary task of defining the word "serve" as used in § 14–07.1–06.

At trial, neither party attempted to instruct the jury as to the definition of "serve." Additionally, "serve" is neither defined in a general provision of the North Dakota Century Code, nor is it defined in Chapter 14–07.1. When words are not explained in the Century Code, absent the plain appearance of a contrary contention, they are to be understood in their ordinary sense. NDCC § 1–02–02. Looking at the ordinary meaning, the relevant portion of the entry under "serve" in *Webster's Third New International Dictionary* (1971) includes: "to bring to notice, deliver, or execute."

Using an ordinary meaning of "serve," there is sufficient evidence to support a finding that the amended order was delivered, or executed, or that Wolff was given notice. The evidence included testimony by Marie Voegele, secretary at the Abused Adult Resource Center, that she placed a copy of the amended order in an envelope addressed to Wolff. She further testified that she placed the envelope with the outgoing mail, and that it was the business practice that either she or her supervisor would actually mail the letters each day by regular United States mail. Voegele also testified that the letter had not been returned to sender. Additionally, Dennis Bullinger, a police officer with the Mandan Police Department, using maps of Mandan which included the restricted geographical area, testified as to the implausibility of Wolff's arriving at the restricted geographical area by accident.

Wolff was given the opportunity to rebut the State's evidence, and to impeach the State's witnesses. Although he failed to raise any evidence to rebut his actual receipt of the amended order, he did cross-examine Voegele. On cross-examination, Wolff unearthed the possible inaccuracy of Voegele's affidavit of mailing. Although Voegele's affidavit swore that it was she who put the letter in the United States mail, she testified at trial that it was the business practice simply

---

1. The relevant North Dakota statute states:
   *"Penalty for violation of a protection order.* Whenever a protection order is granted pursuant to section 14–07.1–02 or 14–07.1–03 and the respondent or person to be restrained has

been *served* a copy of the order, a violation of the order is a class A misdemeanor and also constitutes criminal contempt of court subject to penalties therefor."
NDCC § 14–07.1–06 (1991) (emphasis added).

to put the letter in a box for outgoing mail. The person who actually deposited the outgoing mail in the United States mail would either be Voegele or her supervisor.

■ Given this testimony, there is sufficient evidence to find that the amended order was, in fact, mailed, and therefore was delivered, or executed, or that Wolff had notice of the geographical restriction included in the amended order. There is a rebuttable presumption that letters duly directed and mailed are received in the regular course of the mail. NDCC § 31–11–03(24); *see also Auto–Owners Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 434 N.W.2d 348, 350 (N.D. 1989); *State v. Tininenko,* 371 N.W.2d 762 (N.D.1985). NDCC § 12.1–01–03. Although the State's evidence of mailing was not conclusive, and Wolff's impeachment of Voegele was relevant evidence, there was sufficient evidence for the jury to have found the amended order was mailed or received. Conspicuous in its absence is at least some evidence that Wolff did not receive the amended order. "[E]vidence that a letter was not received is probative of whether it

was mailed." *Auto–Owners Ins. Co.,* 434 N.W.2d at 350 (*citing to Tininenko,* 371 N.W.2d at 762). In that respect, we distinguish the facts of this case from those in which there is testimony as to lack of receipt. *See e.g., Auto–Owners Ins. Co.,* 434 N.W.2d at 348; *State v. Knittel,* 308 N.W.2d 379 (N.D.1981).

■ Looking for contrary intentions for the meaning of "serve" in § 14–07.1–06, *see* NDCC § 1–02–02, Wolff argues that "serve," as used in § 14–07.1–06, refers to Rules 4 and 5 of the North Dakota Rules of Civil Procedure. It is true, in civil cases, that when faced with the task of determining the meaning of "serve" in our statutes, absent a specified method, our recourse has been to rely on the North Dakota Rules of Civil Procedure. *E.g., Sande v. State,* 440 N.W.2d 264 (N.D.1989). However, regardless of the meaning adopted in this case, Wolff's argument fails.

■ Service by a nonattorney using regular mail meets the requirements of the North Dakota Rules of Civil Procedure.[2] The ap-

2. The relevant portions of Rules 4 and 5 state:
"RULE 4—PERSONS SUBJECT TO JURISDICTION—PROCESS—SERVICE

. . . . .

"*(h) Proof of service.* Proof of service of the summons and of the complaint or notice, if any, accompanying the same or of other process, must be made as follows:

. . . . .

(4) in any other case of service by mailing resulting in delivery in accordance with paragraph (2) or (3) of subdivision (d) of this rule, by an affidavit of the mailing of a copy of the summons and complaint or other process, with return receipt attached;

. . . . .

"*(j) Content of the affidavit of mailing.* An affidavit of mailing required by this rule must state that a copy of the process, pleading, order of court, or other paper to be served was deposited by the affiant, with postage prepaid, in the United States mail and directed to the party shown in the affidavit to be served at the party's last reasonably ascertainable post office address, showing the date and place of depositing and that the affiant is of legal age and having attached thereto the return receipt, if any."
Rule 4, N.D.R.Civ.P.
"RULE 5—SERVICE AND FILING OF PLEADINGS AND OTHER PAPERS
"*(a) Service—When required.* Except as otherwise provided in these rules, *every order re-*

*quired by its terms to be served,* every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties. No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.
"In an action begun by seizure of property, whether through arrest, attachment, garnishment, or similar process, in which no person need be or is named as defendant, any service required to be made prior to the filing of an answer, claim, or appearance shall be made upon the person having custody or possession of the property at the time of its seizure.
"*(b) Service—How made.* Whenever under these rules service is required or permitted to be made upon a party represented by an attorney, the service must be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or upon a party must be made by delivering a copy to the attorney or party or mailing it to the attorney or party at the attorney's or party's last

plicable Rule of Civil Procedure to be used when determining the allowable methods of service of this amended adult abuse protection order is Rule 5. Rule 5 applies to service of papers other than "process," and specifically applies to "every order required by its terms to be served." In contrast, "Rule 4 governs civil jurisdiction and service of process." N.D.R.Civ.P. Rule 4, explanatory note. " 'Process' means a writ or summons issued in the course of judicial proceedings." NDCC § 1–01–49(6). An adult abuse protection order is neither a writ nor a summons. It therefore is not "process," and its service is governed by Rule 5.

■■■ We disagree with Wolff's contention that under Rule 5, service by mail by anyone other than an attorney requires a signed receipt as evidence that the mailing resulted in delivery to the individual to be served. *See* Rule 4(d)(2)(A)(iv). The kind of service required by Rule 4 for service of process is not required for service of this order. Although Rule 5 allows Rule 4 service, it does not require Rule 4 service for things other than process. *See* Rules 4 and 5.

Rule 5(b) outlines how service of other papers is made upon a person not represented by counsel. "Service upon the ... party must be made by delivering a copy to the ... party or mailing it to the ... party at the ... party's last known address.... *Service by mail is complete upon mailing*." Rule 5(b) (emphasis ours). Nowhere in Rule 5 does it require that mailing be done by certified or registered mail. Wolff bases his argument on a provision of Rule 5 which states "[p]roof of service under this rule *may* be made as provided in Rule 4 or by certificate of an

attorney showing that the attorney has made service pursuant to subdivision (b)." Rule 5(f) (emphasis ours). To allow Rule 4 proof of service requirements to dictate the allowable methods of service under Rule 5 would be ludicrous. "May" is the operative word in subsection (f). Although a Rule 4 proof of service in the form of an affidavit of mailing does require that a return receipt be attached, *see* Rule 4(j), a Rule 5 affidavit of mailing does not. Rule 5(f); *see* NDCC § 31–04–05 (use of affidavits). Rule 5 proof of service is not limited to what is allowed under Rule 4, and nonattorneys are not limited to registered or certified mail in order to serve papers other than process.

## II.

In his second argument, Wolff argues that even if the method of service was adequate, the proof of service was not adequate. The proof of service of the amended order was in the form of an affidavit of mailing and live testimony by the affiant, Voegele. Once again, this argument is based on the sufficiency of the evidence.

An affidavit is a form of testimony. NDCC § 31–04–01. When an affiant personally testifies in court, it logically follows that the parties have an opportunity to examine the affiant via direct or cross examination. Although Wolff impeached a detail of Voegele's affidavit regarding the mailing of the amended order, the State adequately cured that defect in the affidavit by Voegele's personal testimony. There is sufficient evidence in the record to support the jury's finding of service.

known address or, if no address is known, upon order of the court by leaving it with the clerk of the court. Delivery of a copy within this rule means: handing it to the attorney or to the party; or, leaving it at the attorney's or party's office with a clerk or other individual in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the party to be served has no office, leaving it at the party's dwelling or usual place of abode with some individual of suitable age and discretion then residing therein. Service by mail is complete upon mailing. Service may be made upon a

party represented by an attorney by facsimile transmission.

*"(f) Proof of service.* Proof of service under this rule may be made as provided in Rule 4 or by certificate of an attorney showing that the attorney has made service pursuant to subdivision (b). Proof of service for papers served by facsimile transmission shall include the date and time of service and the facsimile telephone number or identification symbol of the receiving attorney."

Rule 5, N.D.R.Civ.P. (emphasis ours.)

For the above stated reasons, we affirm the judgment of the county court.

VANDE WALLE, C.J., and MESCHKE and SANDSTROM, JJ., concur.

LEVINE, Justice, specially concurring.

I agree that service by a nonattorney of the amended protection order by ordinary mail is sufficient under Rule 5 of the North Dakota Rules of Civil Procedure and was proved by sufficient evidence. I therefore concur in the result and in that portion of the majority opinion that analyzes the sufficiency of the evidence and Rules 4 and 5 of the North Dakota Rules of Civil Procedure.

Unchallenged jury instructions become the law of the case. *Bartholomay v. St. Thomas Lumber Co.*, 148 N.W.2d 278 (N.D.1966); *Cochrane v. Nat'l Elevator Co.*, 20 N.D. 169, 127 N.W. 725 (1910). Because no jury instruction defining the word "serve" or "service" was requested or given, I agree that, under the law of the case, the term "serve" in NDCC § 14–07.1–06 is to be understood in its "ordinary" sense. Usually, however, "service" is a word of art, a "technical" word, *see* NDCC § 1–02–03, that has "acquired a peculiar and appropriate meaning in law." *See id.* That peculiar and appropriate meaning is to be found in Rules 4 and 5 of the North Dakota Rules of Civil Procedure.