STATE of North Dakota, Plaintiff and Appellee,

v.

Richard A. OLSON, Defendant and Appellant.

Criminal No. 950342.

Supreme Court of North Dakota.

July 18, 1996.

Joe A. Johnson, Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, for defendant and appellant.

Mark Rainer Boening, Assistant State's Attorney, Fargo, for plaintiff and appellee.

NEUMANN, Justice.

Richard A. Olson appeals a judgment of conviction entered upon a jury verdict finding him guilty of terrorizing. We affirm.

For a few months in early 1994, Olson lived in a mobile home park managed by Rhinehart Love. Olson rented a mobile home in the park from Lester Trnka.

On a few occasions during Olson's tenancy, Love had spoken with Olson regarding Olson's dog running at large in the park. On the morning of May 18, 1994, Love again spoke with Olson about the dog. Love warned Olson to keep the dog on a leash or he would have it removed from the park. According to Love, Olson responded, "[t]hat will never happen," and further indicated "people [don't] push him around." During the conversation, Olson became agitated, and made repeated hand gestures to the right rear pocket of his pants. Olson also said something to the effect, "you take one of mine, I'll take one of yours." Love owned three dogs and two cats.

Later that evening, Love found Olson's dog roaming the park. Love contacted the police who removed the dog from the park.

Early the next morning, May 19, 1994, Trnka met with Olson at the mobile home because Olson was delinquent again with his rent. Trnka had met Olson on a few earlier occasions to discuss Olson's delinquent rent and the possibility of Olson laying carpet for Trnka to pay the delinquent rent. Trnka began discussing rent and carpet laying, but Olson wanted to talk about his impounded dog. Olson was very agitated, and made comments about "how he was going to take care of him." Olson then reached in the right rear pocket of his pants and, while continuing to comment on "taking care of the park manager," displayed a small handgun to Trnka. Wanting no part in the conversation, Trnka stated, "You are going to get into trouble ... [y]ou are going to end up in jail." According to Trnka, Olson responded, "I know how to do this ... I go over there on the edge of his property and I just agitate him and, you know, I get him to come off his property and then I just go ... [,]" motioning with the gun in his hand, and making a guttural sound.

Trnka left shortly thereafter. He did not recall if Olson mentioned Love by name, but he did remember Olson referred to "the park manager." Trnka had never met Love, but he knew where the park manager lived. Concerned about his conversation with Olson, Trnka attempted to contact Love a few times that day and again the following morning, May 20, 1994. On the afternoon of May 20, 1994, Trnka finally spoke with Love and repeated Olson's statements. He also told Love, "You better find out where your children are because their lives are in danger."

Trnka then reported his encounter with Olson and his statements to Love to the police.

Olson was charged with terrorizing. The complaint alleged Olson "threatened to do harm to Rhinehart Love by stating to Les Trnka that he was going to get back at Rhinehart Love and 'take care of that son of a bitch or one of his family'"; and threatened injury "by brandishing a semi-automatic handgun and stating 'That's what these things are for.'" Olson pled not guilty and requested a jury trial. At the close of the State's case, Olson moved for judgment of acquittal, which the trial court denied. The jury found Olson guilty. Olson appeals, arguing the evidence was insufficient to support a conviction for terrorizing.

By moving for judgment of acquittal, Olson preserved for appeal his challenge to the sufficiency of the evidence. *State v. Lambert*, 539 N.W.2d 288, 289 (N.D.1995). We review sufficiency of the evidence challenges by drawing all inferences in favor of the verdict. *E.g., State v. Gefroh*, 495 N.W.2d 651, 655 (N.D.1993). We assume "the jury believed the evidence [that] supports the verdict and disbelieved any contrary evidence." *Id.* This court will reverse a criminal conviction only if, after viewing the evidence and all reasonable evidentiary inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *E.g., Lambert*, 539 N.W.2d at 289; *Gefroh*, 495 N.W.2d at 655.

To establish terrorizing, the State had to prove Olson threatened to commit a crime of violence or an act dangerous to human life "with intent to place another human being in fear for that human being's or another's safety ... or in reckless disregard of the risk of causing such terror." N.D.C.C. § 12.1–17–04;[1] *State v. Zeno*, 490 N.W.2d 707, 710

(N.D.1992). The State need only offer evidence going to each element of the crime for this court to sustain a criminal conviction. *Lambert*, 539 N.W.2d at 289.

The parties apparently do not dispute that Olson threatened to commit a crime of violence or an act dangerous to human life. But, Olson disputes that he intended to place, or recklessly disregarded the risk of placing, another human being in fear for that human being's or another's safety. He claims this intent element was not established because his threat was made to a person other than the victim, who then communicated the threat to the victim. To support his argument, Olson relies on a Minnesota case, *State v. Schweppe*, 306 Minn. 395, 237 N.W.2d 609 (1975), in which the court stated "a speaker cannot intentionally commit the crime of terrorizing another if he utters the threat in circumstances where he does not know, or have reason to know, that it will be communicated to the victim." *Id.* 237 N.W.2d at 614. Olson claims he did not know, or have reason to know, that Trnka would communicate his threat to Olson because he did not mention Love by name to Trnka, and because Trnka did not know Love.

We conclude there was sufficient evidence for a jury to reasonably find Olson recklessly disregarded the risk that his threats would be communicated by Trnka and thus terrorize Love. Often, the only method of proving criminal intent is by circumstantial evidence. *State v. Lovejoy*, 464 N.W.2d 386, 389 (N.D.1990). "The defendant's conduct both before and after the offense may be considered as circumstantial evidence of the requisite criminal intent." *Id.* There was sufficient evidence to support an inference by the jury that Olson had reason to believe Trnka would communicate his threat to Love. During his meeting with

---

1. The terrorizing statute reads:
"A person is guilty of a class C felony if, with intent to place another human being in fear for that human being's or another's safety or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious disruption or public inconvenience, or in reckless disregard of the risk of causing such terror, disruption, or inconvenience, the person:

1. Threatens to commit any crime of violence or act dangerous to human life; or
2. Falsely informs another that a situation dangerous to human life or commission of a crime of violence is imminent knowing that the information is false."
N.D.C.C. § 12.1–17–04.

Trnka, Olson steered the conversation to his desired topic—his impounded dog. He made repeated remarks about taking care of Love, and explaining how he would take care of Love. Although Olson, in making threats against Love to Trnka, did not mention Love by name, he did refer to "the park manager." Further, there is no evidence indicating Olson was aware at the time he made his threats that Trnka did not know Love. Trnka owned a mobile home in a park managed by Love and knew where the park manager lived. It is a reasonable inference that Olson believed Trnka and Love knew each other, and that Olson at least recklessly disregarded the risk Trnka would relay his threats to Love.

The jury also may well have concluded Olson intended to place Trnka in fear for Love's safety. There was sufficient evidence to support this inference by a jury. Olson, in a very agitated state, repeatedly made threats against Love to Trnka. Because he was concerned about the threats, Trnka endeavored, with success, to contact Love. The reaction to a threat is circumstantial evidence relevant to a defendant's intent in making the threat. *See Schweppe,* 237 N.W.2d at 614.

We conclude there was sufficient evidence reasonably tending to prove Olson's guilt. We, therefore, affirm the judgment.

VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.